DECEMBER.

BRADFORD's Lessee vs. M'COMAS, et al.

M'COMAS *et al.* vs. BRADFORD's Lessee.

*Copies of original leases granted by the agents of the Proprietary, remaining in the auditor's office, with the affidavit of the auditor-general, stating that they were true copies taken from the originals, made before a justice of the peace, with a certificate of the clerk of the county court that such person was a justice, &c.—Held to be competent evidence.*

CROSS APPEALS from *Harford* County Court. Ejectment for two tracts of land, one called *Ward's Purchase,* and the other *Lee's Adventure,* brought in the name of *Samuel Bradford's* Lessee, for the use of *William M'Comas.* The defendants took defence for *Belguard* and *Security,* two tracts located by them on the plots returned in the cause.

1. At the trial, the plaintiff offered to read in evidence certain papers, purporting to be copies of original leases granted by the agents of the Lord Proprietary, and remaining amongst the papers in the auditor's office at the

*The Proprietary, by his agent, in 1744, leased to W F, for 99 years, a parcel land called L A, being part of his lordship's reserved manors. W F, with the consent of the agent, assigned the lease to J L, who by deed in 1765 conveyed his interest to W M, who in 1794 executed a bond of conveyance to N M, conditioned for the conveyance of one half of a tract of land called G. In May 1789 W M had surveyed for him a parcel of reserve land, and called it G, which in January 1797 he assigned to N M, and in February 1797 N M assigned to F O, who as assignee, in April 1797 had resurveyed L A, so leased to W F, and called it B G, being the same land before surveyed for W M, and called G, for which the purchase money was paid to the treasurer in November 1797, and a patent thereon issued to T O in January 1800. T O, in August 1800, conveyed the same land to N M—Held, that the leasehold interest subsisted and remained unextinguished and was not merged in the freehold by the patent to T O.*

*The Proprietary, by his agent in 1742 leased to J W for 99 years, a parcel of land called W P, being part of one of his lordship's reserved manors. The administrator of J W in 1747 assigned the lease, with the approbation of the agent, to D M, who by his will in 1765 devised the land to be equally divided between his sons D and J. These two sons, being in possession, conveyed their interest, one of them in 1769, and the other in 1774, to W M, but the deeds were not recorded within the time prescribed by law. W M, under those deeds, entered into possession, and held it until 1794, when he made a contract with N M respecting the same—Held, that the above facts laid a sufficient foundation for the jury to presume good and valid deeds from D and J, to W M, of said land—although it appeared that there had been deeds executed, and not properly recorded.*

1813.
Bradford
vs
M'Comas

city of *Annapolis*, viz. One dated the 1st of September 1742, made to *John Ward*, of *Ward's Purchase*, for 99 years, at an annual rent of £1 0 1¼ sterling. The other dated the 16th of March 1744, made to *William Few*, of *Lee's Adventure*, for 99 years, at an annual rent of £1 4 5 sterling. He also, to prove the same to be true copies from the original leases in the auditor's office, offered to read in evidence affidavits endorsed on each of said copies, made by *Robert Denny*, esquire, the auditor general, taken before *Joseph Sands*, esquire, a justice of the peace of *Anne-Arundel* county, and duly certified by the clerk of the county court of said county. To the reading of these copies the defendants objected as not being competent testimony for the plaintiff. But the Court, [*Nicholson*, Ch. J.] was of opinion, and so directed the jury, that said copies were competent evidence for the plaintiff, and permitted them to be read to the jury. The defendants excepted.

2. The plaintiff then read in evidence a deed from *John Lyon* to *William M'Comas*, (the person for whose use the suit was brought,) dated the 14th of October 1766, reciting the lease of the 16th of March 1744, from *Benjamin Tasker*, (agent and receiver-general of the Proprietary,) to *William Few*, for 244 acres of land, part of *Lee's Adventure*, and that the said lease was on the 17th of June 1749, assigned to the said *John Lyon* by the said *William Few*, by consent and approbation of his Lordship's agent and receiver-general; and granting, in consideration of £150 paid to said *Lyon*, unto the said *M'Comas*, the said parcel of land, &c. for and during the residue of the term of 99 years which was to come, &c. The defendants then read in evidence a bond of conveyance from the said *William M'Comas* to *Nicholas D. M'Comas*, one of the defendants, dated the 11th of October 1794, in the penalty of £1500, and conditioned "that if the above bound *William M'Comas*, his heirs, &c. shall well and truly make over and convey, by good and sufficient deed in fee simple, the one half of 250 acres certain, of a tract of land lying in *Harford* county, known by the name of *Gratuity*, and to give possession by the 1st of December next, and also to patent the said land, and to clear it of every incumbrance whatsoever; which said 250 acres of land is to be laid out most convenient to the home place, so as to include the buildings, as the said *Nicholas D. M'Comas*, his heirs or assigns,

shall direct; which conveyance is to be made by the said *William M'Comas*, his heirs, &c. unto the said *Nicholas D. M'Comas*, his heirs or assigns, when the said *Nicholas D. M'Comas*, his heirs or assigns, shall pay unto *Zacheus Onion*, his heirs or assigns, the balance of the purchase money at seven dollars an acre, then," &c. The defendants further read in evidence certain certificates of survey returned to the land office, together with their several assignments and endorsements, viz. one a certificate of land surveyed for *William M'Comas* on the 7th of May 1789, being a tract or parcel of the reserve land in *Harford* county, beginning, &c. containing 448 acres of land, to be held by the name of *Gratuity*, and which was thus endorsed, "Returned 20th June 1792. December 23d, 1796, the plat and certificate disagree in the direction of the 16th line disallowed. 28th December, 1796, corrected. December 30, 1796, examined and passed. January 26, 1797, assigned by *William M'Comas* to *Nicholas D. M'Comas*. February 6, 1797, assigned by *Nicholas D. M'Comas* to *Thomas Bond Onion*." The other a certificate of resurvey made the 15th of April 1797, for *Thomas Bond Onion*, as assignee aforesaid, of "part of two tracts of lease land, part of the reserved land lying in *Harford* county, to wit: *Ward's Purchase*, leased to *John Ward* September 1, 1742, for 201 acres, and find it contains a surplus of three quarters of an acre, and have excluded 12¾ acres lying within a survey of *James and Alexander's Paradice*. And of *Lee's Adventure*, leased to *William Few* the 16th of March 1744, for 244 acres, and find it deficient in measure 15½ acres, and have excluded therefrom one and a quarter acre lying within the lines of *Samuel Harper's* survey; also added ¾ of an acre. The whole reduced into one tract, beginning, &c. containing 417 acres, and called *Belguard*. November 16, 1797, examined and passed. Returned 19th November 1797. The books of the late intendant shew that *William M'Comas* purchased in the reserves of *Harford* county the following leases: Part *Ward's* Lease, 191 acres; *Few's* do. 244 acres, making in all 435 acres, £72 10 7. There was a deficiency of 18 acres, £3 0 1, reducing the quantity to 417 acres, £69 10 6. The purchase money was paid to the treasurer on the 20th of November 1797. The certificate was ca

veated by *William M'Comas* on the 6th of April 1798. Caveat discontinued by act November 1797. Patented 1st January 1800. *Memorandum.* The within certificate is a correction of a survey containing 448 acres, surveyed by the name of *Gratuity* for *William M'Comas,* who assigned the same, as within mentioned, to *Nicholas Day M'Comas,* who assigned it to *Thomas Bond Onion.*" The defendants then read in evidence two grants from the state to *Thomas B. Onion,* one dated the 14th of June 1798, for a tract called *Security,* containing 32½ acres, surveyed for said *Onion* on the 15th of April 1797, in virtue of a special warrant granted to him on the 6th of February 1797. The other dated the 1st of January 1800, to said *Onion,* as assignee of *N. D. M'Comas,* who was assignee of *W. M'Comas,* of the tract before mentioned, called *Belguard,* containing 417 acres. The defendants then read in evidence a deed from *Thomas B. Onion* to *Nicholas D. M'Comas,* dated the 29th of August 1800, consideration £1500, for the two tracts called *Belguard* and *Security,* agreeably to the two grants before mentioned. And the defendants then prayed the court to direct the jury, that as the fee was vested in *Thomas B Onion* by the two patents for *Belguard* and *Security,* in virtue of the aforesaid assignments, the leasehold estate became thereby merged and vested in *Thomas B Onion,* the patentee. But the court refused to give this direction, but on the contrary directed the jury, that the leasehold interest still subsisted and remained unextinguished, and was not merged in the freehold. The defendants excepted.

3. The plaintiff then read in evidence the letters of administration granted on the 20th of February 1746, to *William Dallam,* on the estate of *John Ward.* Also a deed from the said *William Dallam,* as administrator of *John Ward,* to *Daniel M'Comas,* for part of *Ward's Purchase,* containing 191 acres, dated the 17th of April 1747, reciting the Proprietary lease of the 1st of September 1742, for 201 acres, and the license of the Proprietary agent to assign the said lease, &c. He also read in evidence the last will and testament of the said *Daniel M'Comas,* dated the 15th of June 1765, whereby he devised the land whereon his son *Daniel M'Comas* then dwelt, called *Ward's Purchase,* being in his Lordship's re-

serve, to be equally divided between his two sons *Daniel* and *John M·Comas*, unto them the said *Daniel* and *John*, their heirs and assigns, for ever. The plaintiff then offered in evidence, that after the death of *Daniel M·Comas*, the two devisees, *Daniel* and *John M·Comas*, entered on the land, and became possessed thereof as the law required. He also offered to read in evidence two deeds from the two devisees, *Daniel* and *John M·Comas*, to *William M·Comas*, for all their right, &c. to *Ward's Purchase*. That from *Daniel*. was dated the 10th of April 1769, acknowledged on the same day, and recorded the 18th of March 1776; and that from *John* was dated the 21st of December 1774, acknowledged on the same day, and recorded the 18th of March 1776. To the reading of these deeds the defendants objected as being no evidence in the cause, they not having been recorded within the time prescribed by law; and prayed the opinion of the court, that the same were not evidence. Of which opinion the Court were, and they refused to let the deeds be read.

The plaintiff then offered in evidence, that from the date of the respective deeds the said *William M·Comas*, for whose use this suit is brought. obtained the possession of the land, and held the possession until in or about the year 1794, when he made a contract with *Nicholas D. M·Comas* respecting the same *(a.)* The defendant then offered in evidence, that the said *William M·Comas* purchased from this state *the reversionary* interest the state held in said land, and that under that purchase a survey was made, and a certificate returned to the land office, calling the land *Gratuity*, which certificate was assigned by said *William M·Comas* to *Nicholas D. M·Comas*, one of the defendants, and to a certain *Thomas Bond Onion*, as herein before mentioned. The defendants also offered in evidence, that *Nicholas D. M·Comas* assigned over his interest in said certificate, of *Gratuity*, to *Thomas B. Onion*, who returned another certificate thereon called *Belguard*, on which a patent issued to the said *Onion*, dated the 1st of January 1800. He also offered in evidence a deed from said *Onion* to *Nicholas D. M·Comas*, one of the defendants, dated the 29th of August 1800, for two tracts of land called *Belguard* and *Security*. The plaintiff then

*(a)* Although it is no where stated, yet the fact is, that *William M·Comas* became an insolvent debtor, and transferred all his estate &c. to the lessor of the plaintiff.

prayed the opinion of the court to the jury, that from the facts and circumstances aforesaid, they may and ought to presume that legal conveyances had been made from *John* and *Daniel M'Comas,* the legatees aforesaid, to *William M'Comas,* for whose use this suit is brought. But the court were of opinion, that the doctrine of presumption is to be resorted to, to fortify long and ancient possessions, when from the great lapse of time a probability may arise that title papers have been lost. But since the first of May 1767, all conveyances of land are to be placed upon the public records, or no interest for more than seven years will pass, and the court will not direct the jury to presume legal conveyances to have been made, when deeds regularly executed since the 1st of May 1767, are pro-duced, which appear to have been recorded several years after the time prescribed by law. Their being placed on record by the party, (though not in due time,) operates against the presumption, as it is an evidence that he relied on them to support his title; and to presume a legal conveyance to support a possession of only thirty-eight years standing, under the circumstances existing in this case, would be to elude the act of 1766, and to carry the doctrine of presumption farther than it is believed ever to have been carried in this state, to support a possession that commenced subsequent to the passage of that act. The court therefore refused to give the direction prayed. The *plaintiff* excepted. Verdict and judgment for the plaintiff for *Lee's Adventure.* From that judgment both the plaintiff and defendants appealed to this court.

The cause was argued on both appeals before CHASE, Ch. J. and BUCHANAN, and EARLE, J.

*Key* and *T. Buchanan,* for *Bradford's* Lessee, upon the *third* bill of exceptions, referred to *Norwood vs. Carroll, et al. Lessee,* 4 *Harr. & M'Hen.* 287. *Hall vs. Gittings's Lessee,* 1 *Harr. & Johns.* 18; and *Yard vs. Ford,* 3 *Saund. Rep.* 175, *(note.)*

No counsel appeared for the other side.

CHASE, Ch. J. delivered the opinion of the court. The court are of opinion, that the court below erred in refus-ing to give the direction prayed in the *third* bill of excep-tions. It appears by the facts stated, that the plaintiff de-

1813.

Bradford
vs
M'Comas

rived his title to *Ward's Purchase* under a lease from the agent of the Proprietary, granted to *John Ward* on the 1st of September 1742, and deduced a regular title under that lease to *Daniel* and *John M'Comas*, the sons and devisees of *Daniel M'Comas*, under his will made the 15th of June 1765. It also appears that *Daniel M'Comas*, the son, was living on the land at the time of making the will. It also appears that the plaintiff claimed title to the land, and offered in evidence two deeds; one from *Daniel M'Comas* dated the 10th of April 1769, the other from *John M'Comas* dated the 21st of December 1774, the said devisees, to *William M'Comas*, under whom the plaintiff claims, for the said land, which deeds were rejected by the court as not being legal evidence—not having been recorded within the times required by law. It also appears, that *William M'Comas* became possessed of the said land from the dates of those deeds, and continued in possession until the year 1794, when he made the contract with *N. D. M'Comas*, one of the defendants. It also appears that no title was set up by the defendants adverse to the title under the said lease, and that *William M'Comas*, and those under whom he claims, have always possessed the land, under the said lease, to the year 1794, and that the possession of *N. D. M'Comas* was acquired under the contract with *William M'Comas*, under whom the plaintiff claims, and not in opposition to his title.

These facts, in the opinion of the court, laid a sufficient foundation for the jury to presume good and valid deeds from *Daniel* and *John M'Comas* to *William M'Comas*, of the said land, and the jury could not be precluded from making such presumption by defective deeds offered in evidence, because the same not being legally admissible, were properly rejected, and could have no influence on the minds of the jury.

The court dissent from the opinion stated in the *third* bill of exceptions, and concur with the opinions in the *first* and *second* bills of exceptions.

On the appeal by the plaintiff,

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.

On the appeal by the defendants,

JUDGMENT AFFIRMED.